# EXHIBIT A

**IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR POLK COUNTY, FLORIDA**
**SMALL CLAIMS DIVISION**

**CASEY HALEY,**

*Plaintiff,*

v.

**EQUIFAX INFORMATION SERVICES, LLC,**

*Defendant.*

Case No:

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** the Plaintiff, **CASEY HALEY**, ("Ms. Haley"), by and through her undersigned counsel, Seraph Legal, P.A., and complains of the Defendant, **EQUIFAX INFORMATION SERVICES, LLC** ("Equifax"), and in furtherance thereof states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages that do not exceed $8,000, exclusive of attorney's fees and cost, brought by Ms. Haley against Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and section 34.01, Florida Statutes.

3. Equifax is subject to the provisions of the FCRA and to this Court's jurisdiction pursuant to section 48.193, Florida Statutes.

4. Venue is proper in Polk County, Florida pursuant to section 47.051 Florida Statutes, because Equifax committed the acts of which Ms. Haley complains in Polk County, Florida.

## PARTIES

### Ms. Haley

5. Ms. Haley is a natural person residing in Lake Wales, Polk County, Florida.

6. Ms. Haley was formerly known as Casey McLaughlin.

7. Ms. Haley is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

### Equifax

8. Equifax is a Georgia corporation, with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

9. Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

10. Equifax is a nationwide *Consumer Credit Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce, specifically the mail and internet, for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS

11. On or about April 29, 2026, Ms. Haley requested a copy of her consumer credit disclosure from Equifax.

12. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Haley's request, Equifax was required to "clearly and accurately" disclose all information in Ms. Haley's file at the time of her

request, with the limited exception that her Social Security Number could be truncated upon request.

13. Upon review of the consumer disclosure Equifax furnished, Ms. Haley noted several errors.

**Equifax's Disclosure Was Not Complete, Clear, or Accurate**

**Missing Original Creditors**

14. Despite the requirement to disclose all information in her credit file at the time of her request, Equifax's disclosure omitted significant amounts of information contained in Ms. Haley's credit file.

15. Equifax's disclosure indicates that Ms. Haley's credit filed contains eight (8) accounts classified as "Credit Accounts" and one (1) account classified as "Collections."

16. Equifax's Disclosure states "Credit Accounts": "includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit."

17. One (1) of the tradelines appearing in the "Credit Accounts" section of Ms. Haley's credit file does not qualify as a "Credit Account" and is actually a "Collection Account."

18. The misclassified account belongs to Jefferson Capital LLC ("JC").

19. JC is a *Debt Buyer* whose business consists almost exclusively of purchasing and collecting charged-off debts originally owed to third parties.

20. JC does not lend funds to consumers or provide any type of financing or credit to consumers, therefore it *never* qualifies as an *Original Creditor*.

21. Despite this, when disclosing the JC tradeline to Ms. Haley, Equifax indicated that JC was the original creditor for the account and omitted any reference to the true original creditor

who actually extended credit to Ms. Haley before charging off the account and assigning the balance to JC.

22. Equifax thus shifted its burden of disclosure onto Ms. Haley instead of fulfilling its obligations to provide a full and complete disclosure of the information contained within its records to Ms. Haley pursuant to U.S.C. § 1681g(a).

**Missing Account Numbers**

23. Making matters even more confusing for Ms. Haley, Equifax omitted all but the last four (4) digits of the account number relating to the JC tradeline.

24. In addition, Equifax did not provide full account numbers for any of the other eight (8) accounts listed in Ms. Haley's Disclosure.

25. JC reported the full account number to Equifax, and this information was contained within Equifax's file regarding Ms. Haley at the time of her request.

26. When Equifax produces and sells reports regarding Ms. Haley to third parties, it includes the full account number and the name of the original creditor.

27. The accurate nature of the contents of its files and the reports Equifax provides to third parties demonstrates Equifax's ability to comply with 15 U.S.C. §1681g(a).

28. Through its failure to provide the account number and original creditor name in the report it provided Ms. Haley, Equifax breached its duty to disclose *all the information* regarding the account, as such information is necessary for a consumer to research and evaluate the information contained in her credit file.

29. Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing whether the information is accurate.

30. Equifax's disclosure contains a section titled "Collections," stating: "A collection account may be reported to one, two, or all three of the nationwide credit reporting agencies (Equifax, Experian and TransUnion) and reflected on your credit reports. It can also have a negative impact on credit scores, depending on the credit scoring model (different ways credit scores are calculated)."

31. JC is registered with the Florida Office of Financial Regulation as a Consumer Collection Agency.

32. Thus, Equifax should have placed the tradeline under the "Collections" header of Ms. Haley's Disclosure, rather than the "Credit Accounts" header.

33. Equifax's failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the statute requires that the consumer reporting agency 'shall clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.").

34. An entity's failure to provide accurate and truthful information as required by law creates an injury-in-fact, thus generating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding the "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied."

35. The lack of full and accurate account numbers caused Ms. Haley great frustration when attempting to understand her credit report and compare it with her own records.

36. Further, pursuant to an Opinion Letter (Advisory Opinion to Darcy, June 30, 2000) from the Federal Trade Commission ("FTC"), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **SEE PLAINTIFF'S EXHIBIT A.**

37. Equifax's omission of the original creditor and full account numbers from its reports greatly decreases a consumer's ability to understand her consumer credit disclosure, identify the accounts, and compare those accounts with her own records.

38. The Consumer Data Industry Association ("CDIA"), a trade association representing CRAs including Equifax, published the *Credit Reporting Resource Guide*, which states that:

> **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports**. Without the original creditor names, consumers may not know what the accounts represent. **SEE PLAINTIFF'S EXHIBIT B.**

39. The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." **SEE PLAINTIFF'S EXHIBIT B.**

40. Upon information and belief, JC complied with the *Credit Reporting Resource Guide* and reported the name of the original creditor to Equifax.

41. Upon information and belief, Equifax generated the disclosure it provided to Ms. Haley using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

42. Upon information and belief, Equifax uses this same template virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

43. Upon information and belief, most consumers obtain their Equifax credit disclosure from www.annualcreditreport.com.

44. Disclosures consumers retrieve through www.annualcreditreport.com all exhibit the same missing account number and original creditor name errors.

45. Therefore, every consumer who requested a disclosure from Equifax through www.annualcreditreport.com since the template's introduction received a disclosure with the same section errors as Ms. Haley.

46. Equifax's error has likely affected hundreds of thousands of consumers.

47. Equifax has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected. *See*, *e.g.*, *Purdy v. Equifax Information Services LLC,* No. 8:19-cv-00217 (M.D. Fla. Jan. 28, 2019).

48. Equifax's knowing and repeated conduct warrants an award of *punitive damages*.

49. Equifax's failure to disclose all the information in a consumer's credit file in its free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Equifax's desire to avoid costs and increase profits.

50. Ms. Haley has a right to receive a full and complete disclosure of the contents of her credit file upon demand at least once per year without charge, and Equifax must present that disclosure clearly and accurately. *See* 15 U.S.C. § 1681j.

51. Equifax's failure to disclose the information within its files accurately, fully, and clearly deprived Ms. Haley of this right.

52. Ms. Haley has hired the undersigned law firm to represent her in this matter and has assigned it her right to fees and costs.

**COUNT I**
**EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA**

53. Ms. Haley adopts and incorporates Paragraphs 1 through 52 as if fully restated herein.

54. Equifax violated 15 U.S.C. § 1681g(a)(1) when it responded to Ms. Haley's request for her consumer disclosure by failing to clearly and accurately disclose to Ms. Haley, a *Consumer*, all the information in her file at the time of her request.

55. Equifax disclosed the account JC reported to Equifax without disclosing the full account number or the name of the *Original Creditor* to Ms. Haley, as well as eight (8) additional accounts without full account numbers.

56. Equifax knowingly provided inaccurate information in Ms. Haley's disclosure, having known of these issues as other consumers have identified and disputed them for years.

57. Equifax is therefore liable to Ms. Haley for the greater of her actual and statutory damages of up to $1,000 per violation, plus attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Haley respectfully requests this Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of $1,000 per incident or Ms. Haley's actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief this Court deems just and proper.

**COUNT II**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA**

58. Ms. Haley adopts and incorporates Paragraphs 1 through 52 as if fully restated herein.

59. Equifax violated 15 U.S.C. § 1681g(a)(1) when it responded to Ms. Haley's request for her consumer disclosure by failing to clearly and accurately disclose to Ms. Haley, a *Consumer*, all the information in her file at the time of her request.

60. Equifax disclosed the account JC reported to Equifax without disclosing the full account number or the name of the *Original Creditor* to Ms. Haley, as well as eight (8) additional accounts without full account numbers.

61. Equifax has a legal duty to provide consumers with a clear and accurate disclosure of all information within its file at the time of the consumer's request.

62. Equifax breached this duty when Equifax disclosed the account JC reported to it without disclosing the full account number or the name of the *Original Creditor* to Ms. Haley, as well as eight (8) additional accounts without the full account numbers, even though data furnishers reported full account numbers to Equifax.

63. Equifax is therefore liable to Ms. Haley for her actual damages, plus attorney's fees and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Haley respectfully requests this Honorable Court enter judgment against Equifax for:

a. Ms. Haley's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief this Court deems just and proper.

**JURY TRIAL DEMANDED**

Ms. Haley hereby demands a jury trial on all issues so triable.

Respectfully submitted on May 4, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Megan Rosenberg*
Megan A. Rosenberg, Esq.
Florida Bar Number: 1005213
MRosenberg@SeraphLegal.com
3505 East Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230 (Ext: 404)
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A. FTC Opinion Letter
B. Credit Reporting Resource Guide, Original Creditor Name Excerpt

# EXHIBIT A

EXHIBIT A

FEDERAL TRADE COMMISSION

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

# EXHIBIT B

EXHIBIT B

# Field Definitions

## K1 Segment
## Original Creditor Name

The K1 Segment must be present each time the account is reported by collection agencies, debt buyers, check guarantee companies, student loan guaranty agencies, and the U.S. Department of Education. **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent.

Some state laws and CDIA policy stipulate that the original client/creditor must be identified. Federal law stipulates that the name of the payee must be identified when reporting returned checks.

Only one occurrence of the K1 Segment can be appended to the Base Segment. If not applicable, do not report the K1 Segment.

| FIELD | FIELD NAME & DESCRIPTION | 366 and 426 FORMATS | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 1 | **Segment Identifier**<br>Contains a constant of **K1**. | 2 | 1-2 | AN |
| 2 | **Original Creditor Name**<br>The content of this field is dependent on the type of reporter.<br><br>Collection Agencies: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been turned over to multiple collection agencies.<br><br>Debt Buyers: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been sold multiple times to different debt buyers. Refer to the K2 Segment for "purchased from" information.<br><br>Companies Reporting Returned Checks: Report the name of the payee; i.e., name of company to which the check was written. Refer to Frequently Asked Question 16 for additional guidelines on reporting returned checks.<br><br>Student Loan Guarantors/U.S. Department of Education: Report the name of the original student loan lender.<br><br>One of the following three options should be used when reporting a creditor's name that would reveal sensitive information about the consumer.<br><br>1. Report the name of the institution, but do not include reference to the type of service. For example, use the hospital name without identifying that it was the psychiatric unit that provided care. If a hospital's name reveals sensitive information, abbreviate the name.<br><br>2. Use the corporate name if it is different from the commercial name of a mental institution or drug rehabilitation center.<br><br>3. Do not report the account if either of the above two options would not sufficiently protect the consumer's privacy.<br><br>**Note: Encoded information is not acceptable in this field.** | 30 | 3-32 | AN |


*Copyright 2011 © Consumer Data Industry Association*